UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 4:14-cr-00283 AGF/NCC |
| | ) |
| DANA JEFFERSON, | ) |
| a/k/a CASEY JEFFERSON, | ) |
| a/k/a DANA TIBERIUS JEFFERSON, | ) |
| | ) |
| Defendant. | ) |

## THE UNITED STATES' SENTENCING MEMORANDUM

The United States respectfully requests that this Court impose a sentence against Defendant Dana Jefferson within the range agreed to by the parties and recommended by the Presentence Investigation Report ("PSIR") (Doc. #42) of 37 to 46 months. Both parties have agreed not to request a sentence outside of that range, and the findings of the PSIR, to which neither party has made any objection, support the imposition of such a sentence.

The crimes Jefferson has admitted to committing are serious ones. For nearly five years, Jefferson repeated the same series of lies to lender after lender, claiming that he was due for a multi-million dollar inheritance. Jefferson gave various explanations for his present lack of access to the funds, ranging from a controlling step-mother to the IRS and the PATRIOT Act, but he repeatedly insisted that the money was coming. The lure of future riches induced those lenders to give Jefferson large sums of money and, in some cases, to take him into their homes, all based upon a promise that Jefferson would repay them in spades once he gained access to his inheritance. In some cases, he promised lenders he would buy them homes or vehicles. In others, he promised to pay for cruises, wedding expenses, and even plastic surgery. Yet each of these

was a promise that Jefferson could not keep, because Jefferson had no such inheritance. Instead, the inheritance was a fiction, designed to gain the trust and generosity of his victims. The nine victims who lent money to Jefferson now find themselves short a total of $741,259.35, with nothing to show for their generosity except Jefferson's empty promises.

As the PSIR reflects, Jefferson was responsible for a similar, smaller scheme in early 2007. According to the unobjected-to recitation of facts in the PSIR relating to his prior convictions for passing bad checks, Jefferson borrowed approximately $4,350.00 from three lenders (not victims in this case) who had given Jefferson money based upon a representation that he was the beneficiary of a trust fund that he could not access. When Jefferson failed to pay those lenders back, he was prosecuted for passing bad checks. Jefferson was sentenced to a year in jail for those crimes, but that did not deter him from duplicating and expanding his scheme in the years to come.

In the instant case as well, it took time for Jefferson to come clean about his lies. Even when confronted by federal agents on August 13, 2014, Jefferson claimed that he intended to pay back the loans with money from his "trust." The next day, he borrowed an additional $1,000 from one of his victims, promising that lender a nearly threefold return of the total amount lent to Jefferson, whose loans already totaled $108,000.00. Jefferson then changed his phone number and moved out of the house at which he had been staying (a house owned by two of his victims). As Jefferson admits, he fled to the apartment of a friend in St. Charles for the purpose of evading law enforcement.

Since that time, however, Jefferson appears to have come to terms with the wrongs he has committed. From the moment his counsel first approached the United States about the possibility

2

of changing Jefferson's plea to guilty, Jefferson has fully admitted the conduct that formed the basis of the charges against him, and he has not disputed the losses claimed by his victims nor any of the other enhancements identified in the PSIR. In its limited observation of Jefferson since the time of his arrest, the United States has observed contrition and remorse for the harm he has caused to his victims. The United States has some hope that his having accepted responsibility for his actions may be the first of many steps that Jefferson will have to take in order to return himself to being a law-abiding member of society.

In light of these considerations, the United States believes that a sentence within the Guidelines range will adequately serve the purposes of punishment this Court must consider at sentencing, as set forth in Title 18, United States Code, Section 3553(a). In particular, the United States believes that a sentence of up to 46 months will be sufficient, but not greater than necessary, to reflect the seriousness of the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with effective correctional treatment. The United States therefore respectfully requests a sentence within the Guidelines range of 37 to 46 months.

Dated: April 9, 2015

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768
Assistant United States Attorneys
111 South 10th Street, Suite 20.333
Saint Louis, Missouri 63102
Telephone:  (314) 539-2200
Facsimile:   (314) 539-2287
*richard.finneran@usdoj.gov*

3

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 9, 2015 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

      */s/ Richard E. Finneran*
      RICHARD E. FINNERAN, #60768MO
      Assistant United States Attorney